. . . Thank you, Your Honor, Carlton Forbes for the appellant, Anthony Mamona, I'd like to reserve two minutes for rebuttal. That'll be granted. Thank you. When this case was last on appeal, a panel of this court held that the conditions of Mr mom on his confinement satisfied the first prong of an eighth amendment deliberate indifference claim, because they deprived him of the minimum necessities of life, namely warmth and sleep on remand, Lieutenant Barbon changed course, arguing for the first time that Mr Mamona has no cause of action under Bivens. But Mr Ramona his claim falls squarely within an established Bivens context. The Supreme Court first recognized such a claim in Carlson versus green, a case involving deliberate indifference to a prisoner's health condition. And the court reaffirmed the availability of such a claim in farmer versus Brennan, a case involving deliberate indifference to the risk of prisoner violence. Can we talk about that for a second because it was my impression that farmer did not reach that conclusion, and I, and I based that as I'm sure you know on the subsequent decisions of the Supreme Court repeatedly making clear the Bivens actions had only been recognized in three contexts. So, how do we deal with farmer, given the courts later pronouncements on the scope of business. Well, Your Honor in the Supreme Court subsequent cases for example Ziegler versus a bossy where it referred to its prior Bivens case law, it did not overrule farmer so farmer still is good law. And in this court has held in history and that farmer is an established events context and to the extent that it wasn't explicitly explicitly mentioned in a bossy that could be because the Supreme Court just viewed it as not distinct from the context that was first established in Carlson, I mean Hernandez, in particular is pretty clear and saying, here are the context I mean we can, we could have a spirited debate about whether the line of business jurisprudence accords with many principles, including common law and natural law understandings of remedies that should be available to those who have been previously injured by the state. But we are here, right, we're, we are in the Bivens world, and it seems to me that Hernandez in particular says it is very limited, and so I'm struggling a bit to see how we can read farmers continuing vitality after Hernandez, even if, and I understand that the state is out there but but Hernandez is telling us very clearly it's these three contexts and I have, I have trouble saying that I can talk all of that, up to just omission that they sort of, you know, just didn't mention it I mean it seems the whole point in Hernandez and a bossy for that matter was to say we are mentioning this because we want to be clear about the context we have currently recognize some help me out a little bit with that one. Well, your honor and Carlson the court held that there was a eighth amendment deliberate indifference claim for prisoner officials who were deliberately deliberately indifferent to a substantial risk of harm in that case it was a denial of medical care. But in farmer there was still a deliberate indifference towards prisoners harm it was just in that case exposure to prison prisoner on prisoner violence. And so there's a way of reading farmer that is consistent with Carlson, you don't need to view it as an independent new business context and that's why the Supreme Court and Ziegler versus a bossy and in Hernandez only referred to Carlson Davis and vivid. And that's certainly the way that this court has viewed it in history. So are you saying that the, the reason why farmers not explicitly mentioned is because Carlson is talking about conditions of confinement had in front of a type of condition of confinement meeting medical care, or the lack of it, and that farmer was a different another conditions of confinement and that was a failure to protect. That's exactly. That's right, Judge Schwartz and if you look at the Supreme Court's conditions of confinement cases and other contexts for example, for example, the Wilson case, but Justice Scalia said there was that, you know, the prison has an obligation to provide for humane conditions, and there is no practical difference between denial of medical care and other conditions of confinement, including as relevant to this case. Denial of warmth and sleep. And so there is a established evidence context for deliberate indifference claims, where there is a substantial risk of harm exposure to prisoner on prisoner violence is one type of harm that would fall under that context, as would be an extreme and protracted deprivation of sleep and warmth, which is what happened here in a bossy. There, we obviously know it's a Fifth Amendment claim, and it involved detainees, hence the Fifth Amendment, not the eighth. But when they started talking about the plaintiffs claims there about conditions of confinement. Among the things the court identified was an inspector general report about the confinement conditions that existed in the Supreme Court's case in a bossy they didn't extend a cause of action there to those detainees or remedies to them. Is that because of who they sued meaning meaning high level officials challenging a policy, or was the court communicating something broader than that, namely condition of confinement claims can't be brought under business. Well, it was a number of factors, Your Honor and certainly the the individuals that were sued were part of that analysis with the court said, Well, first of all, there were two groups of claims in a bossy there were the sort of high level detention policy claims. Those were right after those were imposed right after the September 11 terrorist attacks. And so they implicated high level national security policy with a broad national scope. I think that's why for those category of claims the Supreme Court said look this is really a different events context. There were a separate group of claims that were filed against prison wardens related to abuse of detainees in those prison facilities, but even there, what the court said was that, look, this is not an allegation that the warden. The wardens themselves engaged in some type of conduct that violated the Eighth Amendment. Rather, it was really about their failure to adequately supervise prison guards were the ones that were actively abusing the detainees, and they said because this That's why the court treated it as a new, a new business context and then remanded to the Court of Appeals to determine whether they should recognize the cause of action. Would you tell me again maybe why you think a bossy and Hernandez omitted any reference to farmer. Well, Your Honor, as I said before, the in a bossy and in Hernandez, they referred to the two times that the court has expanded Bivens. One of those was Carlson. And so having that I'm not sure they expanded Bivens but they at least recognized in those cases that it was an appropriate Absolutely, Your Honor. I think that that's that's that's correct, Your Honor, they they recognize that it was an appropriate Bivens cause of action. And so having recognized that in the context of Carlson, where there was a deliberately indifferent Eighth Amendment violation that exposed a prisoner to substantial risk of harm. They did not need to add that they had recognized a new cause of action in farmer there's a way of reading farmer that is consistent with Carlson. And that's exactly what the Third Circuit did industry and they said that, look, we're not going to put words in the Supreme Court's mouth but it could be that they just viewed the context in a farmer prisoner on prisoner violence as not distinct from the context. It is an exceedingly modest expansion of Bivens and it would be appropriate to do so here that's following the second prong of the analysis under a bossy, but but even a modest extension is still an extension. That's correct, Your Honor, and so I would still maintain that it falls within Carlson Carlson was a conditions of confinement case involving a deprivation a particular type of deprivation, which is the failure to provide adequate medical care. But, I mean, clearly if you if you look at farmer, they were referring to the plaintiff there was a transgender woman, and discussing the unique risks that that that put her in when she was placed in the general prison population. And even if you look at justice suitors concurrence and farmer. He even talks about the harms that she suffered in in really medical terms. And so there's a way of viewing those cases as fully consistent with Carlson. And that's true of the case here as well. The ongoing protracted deprivation of sleep and warm, which is the way that this court described in a storm on his claim when it was previously on appeal, clearly can have medical consequences sleep deprivation can lead to physical and mental harms. And so, just as the deprivation, just as withholding medical treatment to a individual who has asthma can qualify as a deliberately indifferent. Eighth Amendment violation. So too can the deprivation of sleep fall under that same context. I think that formulation counsel is, is, is, is quite right. I think there is a way to make all this work the challenge though that I think you have is does a bossy and Hernandez allow for that kind of synthesis. Right, maybe if we were writing on a, on a blank page, or interpreting the law of precedent as we often do, we would say well we have to find a way to sort of synthesize this together but you do you disagree that a bossy and Hernandez are sort of saying that's exactly what you can't do. You can't find ways to pull this together because that results in even a modest extension of Bivens which is what a bossy says you can't. And so, I help me help me put your framework, which I think is right as a normal matter of presidential interpretation into the Bivens framework that were given in a bossy and Hernandez. Well, Your Honor, the Supreme Court in a bossy and in Hernandez said that further expansion of Bivens was disfavored but it didn't say that it was doomed. It left the door open for recognition of new Bivens claims. And I think that there are a few helpful factors that you can look to in Ziegler versus a bossy that can help you in this case. So the first is in determining whether something is a new Bivens context. The court included a list of factors that you can look to and chief among those are whether it involves the same constitutional claim here it does, it's a violation of the Eighth Amendment. The second would be whether it's against the same defendant, or the same type of defendant. So if you look at cases like molesto there was a private prison facility. Here it is a rank and file prison official under the BOP. And I think if you if you apply that framework here you see that there is no meaningful difference, perhaps there is a technical difference but not a meaningful difference between this case and Carlson. And so I'd like to reserve the remainder of my time for about a little unless the court has any further questions. I actually had another question on the turning to if it's a new context. Yes, Your Honor, wrong. And the question is, on the, on the factor that talks about intrusion would permitting a conditions claim of this or be disrupted. I think you're in, I think your adversaries brief might have talked about are we going to start micromanaging at such tiny level that we're starting to intrude on how the prison is operated. Or is that an unnecessary concern, because of what it takes to actually be able to state a claim under the Eighth Amendment. It's the latter Your Honor, there are tools at the disposal of federal courts to weed out on meritorious claims, both under the PLRA which imposes exhaustion requirements and ask the court to play a kind of gatekeeping function, as well as with the the defense of qualified immunity. What this court has looked to in cases like history and when trying to determine whether to recognize a new cause of action is whether it would entail kind of an evaluation of the decision making of prison officials. So in history and there were two types of claims there was the condition to confinement prisoner and prisoner violence claim. There was also a punitive detention claim. And what the court said is that for that second claim the punitive detention claim. This is really about, you know, whether the prison was justified in moving the prisoner into segregated detention for that I think it was the fourth time in burst history and, and there it said that that's going to involve the type of day to day decision making that we typically leave to prison officials, just last week the Fourth Circuit decided a similar case for all versus Shreve that also involved the kind of First Amendment retaliation claim involving placing a prisoner in segregated housing. And there too they said, you know, inquiring into the decision making of prison officials is something that's different. That's not what's what's happening here. Certainly we believe that the prison was not justified and moving Mr mamana into the yellow room, but separate and apart. There is a basic kind of baseline that prisons cannot go below in the conditions within that type of cell and chief among them is providing adequate warmth and sleep and I see my time has expired. And so I'll, I'll leave it there. Thank you, Your Honor. Let me just see if my colleagues have any further questions before you have yet. Take a virtual seat, so judge maybe any further questions for counsel. You're on mute. Good. Okay, did Stratzler, any further questions for counsel and I just say as one was there any allegation in your operative complaint that your client was treated differently than any other person who was any other prisoner than that was put in the yellow room. There are no allegations about other prisoners that were put in the yellow room, Your Honor. But there are allegations that, you know, moving him into segregated housing was unreasonable and that prison guards taunted him while he was held in the yellow room. Okay, thank you. Okay, thanks. All right, we'll hear back on rebuttal. Good morning, Your Honors. May it please the court. My name is Naveen Johnny I'm an assistant United States Attorney, representing the government on behalf of Lieutenant David Barbin. Your Honor, this case is about rights versus remedies. The last time Mr Romano was before this court, a panel decided that as pleaded his allegations established a violation of the Constitution, a violation of his rights. The question before the court today is, no matter how serious that violation may have been, is he entitled to remedy, and as Judge Mady pointed out, it's not a question of, does this make sense does this feel right we follow natural law, it's, it's really I don't believe so, Your Honor, because the, the, the seriousness of the violation really is a threshold matter before you even get to write sure there'd be a cause of action and so it made sense to to address that element and, and there was some question that this court found that okay there is seriousness. So then it then it kind of proceeds to the next step. So that would be the, your, your analysis is, we decide whether there's a cause of action after we decide whether there's been a violation that that's do you think that's your honor of operations. I'm here because of the nature of the, the claim. This, this sort of new area you had some Supreme Court President talking about okay you could have some kind of combination of these factors. It, it seems like, as opposed to counsel pointed out right there's some sort of screening initial to get to the merits of these claims so it seems like that filter is, is, is a better one to put put first. You recognize the Fourth Circuit has has found that you can waive this argument of it's not raised properly. Now that procedural posture is different than this one but you're aware that fail to raise this can be a Bivens claim, the Bivens argument can be waived you recognize that right. I recognize that your honor. Okay. Um, let's ask, let's turn to farmer. And you heard some questions about to your adversary about whether farmer is excluded by its omission as not a recognized context, which are response to your adversaries points that farmer is just an another example of a conditions claim it's unnecessary. As we said industry and for it to have been specifically identified. Sure. Thank you, Your Honor. Um, well one thing we have is the and and lower courts, courts of appeals Supreme Court did this as a general practice prior to a bossy assuming there was a cause of action, and we do have language in the farmer decision. The courses in particular is the lower courts have uniformly held. And as we have assumed prison officials have a duty to protect prisoners from violence at the hands of other prisoners. So we have that in the decision, and it seems that that's the most plausible explanation is that that farmer didn't establish a new context. It was assuming there was one and then spent the bulk of the decision trying to explore this the standard of deliberate indifference. And this court is recognized industry and that it wasn't clear right it may be that the court simply viewed the failure to protect claim as not distinct from a deliberate indifference claim. Even if it is accepted as establishing a legitimate context, what what the this court did in history and, and what Mr Romano would like the court to do now are very different. The, the history and facts and the farmer facts really were on all for the this prisoner and prisoner violence and so this court felt like it didn't want to over declined to conclude that farmer been overruled by implication, it saw farmers practically dictating its ruling because the lineup of the facts was so clear. And so that was a justified leap one could say. What Mr matter wants to do here is is establish this broader category, and the Supreme Court precedent and this court's precedent. They really get much finer when we talk about establishing a context in farmer there's some preliminary language, and it funnels down, and then farmer gets very clear that it's talking about in particular, the issue of prevention of prisoner and that's how this court has viewed that case. And when we look at how, for example, Carlton has been distinguished the Supreme Court talks about it being a claim against prison officials for failure to treat an inmate's asthma. It's very fine grained distinctions this idea of these kind of general types of claims is rejected this court similarly characterized Carlson is concerning inadequate prison medical care. So, think about this case though, this particular case. I recognize there's not an inadequate medical care came clean here, and we don't have a claim of failure to protect from inmate violence but what we do have is a sequence of events in this particular case that begins with a plaintiff who tried to get medical care. Didn't work out the way he wanted, they tried to place him in a cell with an inmate who had a history of violence towards other inmates. That didn't happen, they ends up in the yellow room. So if you think step one is like, think Carlson step to think former. And here we have someone placed in a conditions of confinement. Doesn't this almost create almost a theme, a string between the different episodes, such that this really isn't a different context, because it arose out of circumstances that at least have the earmarks of some of the things that happened in Carson former. Thank you just Schwartz, the really the, the, the factual distinctions do get finer I mean when we talk about new context since we're at that first step of the threshold. There's, there's a non exhaustive list. And, and here, one of one of those factors is the constitutional right issue. And this court in Vanderloch acknowledge that a recognition of a cause of action under a constitutional amendment does not mean that such an action can vindicate every violation of the rights afforded by that particular amendment. So, if we look at specifically I mean if we want to look at Carlson right it's it's very specifically what there's a known condition. There was a death that occurred as a, as a result. And it really the the violation that we're talking about the right was the right to the care here, it may have been a preliminary thing that led to it but what's being complained of is conditions of confinement. And that is a different Wilson, the Wilson language I know it's a 1983 case. But how do you reconcile the clear language that says the care that medical care of prisoner re receives is just so much of the condition of confinement is the food he's fed and the clothes he's issued temperature in which he's kept in his protection from others. How do you get around that language, where the Supreme Court is telling us, these are all types of conditions of confinement that could violate the eighth amendment. The fact that it's a 1983 case, I think is dispositive, because this clumping of claims to create categories, that's something I mean, Bivens was on track to become the federal equivalent of 1983, and the Supreme Court stopped that. And so to take this approach that what you can do in 1983, where we have a bossy and subsequent decisions, saying no we're gonna we're gonna apply much stricter test to deciding claims. I really think that's deposit dispositive in and distinguishing Wilson it just really doesn't apply here. So how so tell me how you, how do we reconcile this point, I get what you're saying Congress created 1983 told us there was an avenue by which state prisoners can seek relief for violation of the eighth amendment. But how can we ignore the following. Assume we have exactly the same conditions of confinement, in which a state prisoners housed in is a violation of the eighth amendment, which prior to incorporation only apply to federal officers, your position would then have to require us to take the following position. Only state officials are subject to the eighth amendment restrictions. Federal officials could house and engage in the same sort of conduct for a federal inmate, and they're absolved from any kind of individual liability but a state official is not. How do we reconcile them. We have this, I mean the bossy really was right recognizing, I mean 20 years before a bossy, the Supreme Court already was was referring to as an unseen regime right something that it changed courses on and so we have that split I think we really do have to accept that and the Supreme Court has established that now. Now as a person counsel said they've, they've created an avenue for creating new new context and because it's a very narrow opening. But, but the spirit of a bossy really is, is that they are doomed, you know that that really. This shouldn't be created. And the fact that there would be this disparate result is something that the Supreme Court has has pronounced its verdict on and is okay with I mean a similar argument could be made. Okay, you have somebody with a serious violations of their rights, should they have a remedy what's the point of a right, if you can't have a remedy, and really, the Supreme Court has said, that's what we want Congress to step in, and if it's going to go beyond what we've already done. We're going to leave that to for Congress to remedy, we're not going to have courts do that. What factors should you do you say councils hesitation here let's assume it's a new context. What, what's the most like we, you think is the biggest factor that says we should hesitate. Should this be. Sure. The second step the special factors, it is not a totality of circumstances test, it's not a balancing. It's, it's a non exhaustive list. And if the court finds one, even one factor, as this court said in Davis dishes if we have reason to pause before blind business is a new context we reject the request. The government would suggest that one very strong special factor is, is the potential cost to the government of recognizing this private cause of action. And what's interesting here is the Supreme Court has talked about this idea of categories of cases and mystery and was quoting that we must be reluctant establish whole categories of cases in which federal officers must defend against personal liability, and the Even if his particular claim, the court finds it very serious. It is quantitatively different from a goosebumps claim, it is not qualitatively different. Once that door is opened. Now we have this hazy area of the law, this warmth. There's a sleep there's a mattress conditions the blanket the lights being on. We've all these factors, very ill defined, and and now the, the, the court will have stamped. It's imprimatur on this and and said okay inmates who follow the litigation. Now, if you have any one of these. We've, we've opened the door to this category of cases, and now the courts will have to deal with it whether it's screening where this motion dismiss, they're going to, they're going to enter the docket they will they will have some some encouragement and some some sanction. So that is a huge factor. Government really see this as a case where the main factual distinction is the lights were on and the blankets weren't warm enough, I just want to understand. I mean, we can take any argument to its to its perhaps illogical conclusions, but is that really a fair characterization of what happened here. As a court. Announce it in the first time around, is that following Supreme Court President, some combination, right, of some of these necessities of life, warmth, sleep can create a constitutional violation, even if one of them alone didn't do it, and in here right. Would we be here if it was just that the lights were on the whole night. It's the temperature in the room. It's the the lack of bedding, and it's the light so it's this this combination, but it's really because it creates this category of conditions and confinement cases. I mean we have this one cursory analysis from the Ninth Circuit and read that says okay yeah these are the same things, whereas we have half a dozen district court cases in this circuit, really making that distinction that that that the Supreme Court and Third we know to dry cells one where there's no running water at all. The bathroom knows no running sink water you can't wash your hands. And let's assume that the prisoner was placed there and was not permitted to have any toilet paper ability to engage in any kind of hygiene for five days. As a result, and couldn't leave the cell so as a result, excrement is in the cell. And he has to stay there with it. And nobody lets them clean it up and clean himself up. Would you say that that is not a conditions of confinement case for which the eighth amendment would provide an opportunity for relief. I ask it this way because you're asking us to make a ruling because these facts may not be as extreme as the one I've just described. But that's not what we're deciding here. We've already decided in my model to I guess the when it came up that as alleged it was sufficient, but take my dry cell circumstance suing an individual, not a challenge to a policy made by a higher level official. Would it be the government's position that a Bivens claim could not be brought. It would I see my time to try it if I may have just a minute to address the question. The. It is really the category and and that's the way the government's reading a bossy and reading interpretations of bossy by the circuit that it's about what is the context of the claim, regardless of the specific facts, and, and is that is that a new context and if there is, is there any one of these factors giving some pause. And so the answer is yes that if it's falling in this conditions of confinement. It's not lining up with deliberate indifference to medical care now if that prisoner, three days in right is suffering some symptoms saying oh you know now now I'm sick because I'm near all this or whatever right then now we're starting to have a different nature of claim but, and here like we have Mamata no no physical injury there's no treatment afterwards. So it's the idea of the conditions were uncomfortable now they may have been constitutionally uncomfortable, maybe ridiculously comfortable offending anyone but this category of case, this conditions of confinement, that door should not be open that's the government's position it is a new context, and there's plenty of reasons to hesitate. Okay, let me see if my colleagues have any further questions just maybe. Nothing further. That's Traxler. No, thank you. All right. Thank you, counsel. Thank you so much, your honors. You're welcome. Mr Forbes. Thank you, Your Honor, um, I just like to make three quick points in the limited time I have left. So the first just briefly on your point about whether this was waived. I would just note that in Hernandez versus Mesa the Supreme Court has said that determining whether there is a given cause of action is typically to be viewed as an antecedent question that should be addressed at the outset. And if you look at this court's prior panel opinion it described cited to farmer in describing Mr mom on his claim but the district court did not even attempt to analyze this claim under farmer so that's point number one point number two. So, so just in determining whether this claim is a new cause of a new cause of action or arises in an established evidence context. My opponent on the other side Mr johnny referred to the spirit of a bossy, but if you actually look at the text of a bossy the Supreme Court provided guidance about what how to determine whether something was a new business context it says you can look at the rank of the officers involves here it's the same, the constitutional right at issue here it's the same it's the eighth amendment, the generality or specific specificity of the official action again this is a discrete conditions of confinement in a particular cell it's not a high level executive function and if you just go through that list, the factors that the Supreme Court identified in a bossy, you'll see that they all apply here that there are they all point in the direction that this is an established Carlson claim. And then finally turning to the second prong of a bossy whether there are special factors that counsel hesitation, I would just note that the, the factors that Lieutenant bourbon has raised were all considered and rejected industry and there too they is not that's true of any evidence claim, and the Supreme Court clearly signaled that we can continue to have evidence claims. And so just if you apply history and if you apply Carlson, you see that this is a business claim that arises in an established context and to the extent that there is any need for further expansion it's exceedingly modest. If it's true that in farmer exposing an individual to who has unique circumstances to prisoner of violence is enough to have a business business cause of action deprivation of sleep, which is a requirement that we all face is enough for a business cause of action here as well so we respectfully ask the court to reverse the district court's order. Judge me do you have any questions to counsel. I think further. That's Traxler, just one, and I think it can be answered yes or no. Was waiver asserted as a ground for your appeal. No, it was not your honor, and if I could take a few additional words I just note that when this was brief below we did point out that the this court had already recognized Mr mom on his cause of action so we did point out that this this issue was essentially, you know, part of the panel decision before but we we recognize that we didn't explicitly frame it as a waiver. Okay. Thank you. Thank you very much. Thank you both counsel for a very informative and helpful argument the court will take matter under advisement. Have a great rest of the day. Thank you, Your Honor.